IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00005-PAB-SBP

MATTHEW IWASKOW,

    Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA,

    Defendant.

---

## ORDER

---

This matter is before the Court on Defendant's Motion for Partial Summary Judgment and Memorandum Brief in Support. Docket No. 55. Defendant Safeco Insurance Company of America ("Safeco") seeks an order dismissing plaintiff Matthew Iwaskow's statutory bad faith claim. *Id.* at 1-2. Iwaskow filed a response opposing Safeco's motion. Docket No. 60. Safeco filed a reply. Docket No. 62. The Court has jurisdiction under 28 U.S.C. § 1332.

## I. FACTS[1]

On December 4, 2015, Iwaskow, was involved in a car accident.[2] Docket No. 55 at 3, ¶ 1. The other driver was determined to be entirely at fault for the accident. *Id.* At the time of the accident, Iwaskow was insured by a policy issued by Safeco that

---

[1] The following facts are undisputed unless otherwise indicated.
[2] Iwaskow disputes Safeco's characterization of the severity of the car accident as "modest." Docket No. 60 at 2, ¶ 1.

provided up to $500,000 in underinsured motorist bodily injury coverage ("UIM coverage").  *Id.*, ¶ 2.

On December 5, 2015, Iwaskow notified Safeco of a property damage claim for his vehicle that was ultimately handled by the tortfeasor's insurance.  *Id.*, ¶¶ 3-4.  On December 17, 2015, a Safeco medical payments ("MedPay") adjuster emailed Iwaskow asking for information on Iwaskow's car accident and on any injuries he attributed to the accident.  *Id.*, ¶ 5.  On December 18, 2015, Safeco's MedPay adjuster sent a letter to Iwaskow requesting medical bills for any bodily injury claim.  *Id.* at 4, ¶ 6.  In early 2016, Safeco's adjuster paid MedPay benefits on behalf of plaintiff and, on March 25, 2016, Safeco's adjuster informed Iwaskow that his $5,000 MedPay limit had been exhausted.  *Id.*, ¶¶ 8-9.

On October 14, 2016, plaintiff's counsel ("counsel") advised Safeco that he represented Iwaskow and requested a copy of Iwaskow's policy, coverage limits, claim file, and medical payments claim log.  *Id.*, ¶ 10.  On February 9, 2017, counsel advised Safeco that Iwaskow was still seeking medical treatment related to the car accident.  *Id.*, ¶ 11.

On March 31, 2017, Safeco contacted counsel; counsel advised Safeco that Iwaskow was nearing the end of his medical treatment, medical records were being ordered, and the amount of Iwaskow's medical bills were unknown.  *Id.*, ¶ 12.  On August 16, 2017, counsel advised Safeco that Iwaskow was still receiving medical treatment, his medical records were being gathered, the amount of his medical bills were unknown, and he might present a UIM claim.  *Id.* at 5, ¶ 14.

2

On September 11, 2017, counsel informed Safeco that the tortfeasor's policy limit was $25,000 and Iwaskow had incurred between $13,000 and $14,000 in medical bills. *Id.*, ¶ 15.  On September 13, 2017, Safeco sent a letter to counsel requesting information to determine if Iwaskow had a potential UIM claim.  *Id.*, ¶ 16.  On October 6, 2017, Iwaskow gave a recorded interview to Safeco, answering all the questions he was asked.[3]  Docket No. 60 at 4, ¶ 3.

On February 5, 2018, April 9, 2018, and August 30, 2018, Safeco sent letters to counsel requesting Iwaskow's medical records and bills, his prior medical records, and the tortfeasor's insurance declarations page.  Docket No. 55 at 5-6, ¶¶ 19-20, 22.  Safeco did not receive responses to its February and April letters.  *Id.*, ¶¶ 20, 22.  On July 3, 2018, Safeco called counsel, but was unable to reach him.  *Id.* at 5, ¶ 21.  Between August 30, 2018 and July 22, 2020, Safeco sent counsel 18 letters requesting the information it previously requested.  *Id.* at 6-7, ¶¶ 22-34.

On September 14, 2018, counsel sent Safeco a letter requesting permission for Iwaskow to settle with the tortfeasor for the tortfeasor's policy limits of $25,000.  *Id.* at 6, ¶ 23.  On September 19, 2018, Safeco gave permission to Iwaskow to settle with the tortfeasor.  *Id.*, ¶ 24.

On June 21, 2019, Safeco called counsel; counsel's office advised Safeco that Iwaskow had settled with the tortfeasor and was gathering his medical bills to send to Safeco.  *Id.*, ¶ 27.

---

[3] Although Iwaskow identifies the fact as disputed, Docket No. 60 at 4, ¶ 3, Safeco admits this fact is undisputed.  Docket No. 62 at 3, ¶ 3.

On April 13, 2020, Safeco sent an email to counsel; counsel responded on April 16, 2020, stating that Iwaskow was still being treated and medical records were being gathered.  *Id.* at 7, ¶ 33.

On July 31, 2020, counsel informed Safeco that he planned to complete and send a compilation of Iwaskow's medical records in the next few days.  *Id.*, ¶ 35.  On August 19, 2020,[4] counsel's paralegal informed Safeco that Iwaskow's medical bills had increased to $48,000.  Docket No. 60 at 5, ¶ 8.[5]  On August 19, 2020, counsel informed Safeco that Iwaskow "wishes to hold off sending in the medical records for another six weeks or so as his treatment is ongoing."  Docket No. 55 at 7, ¶ 36.  On August 28, 2020, Safeco assigned Daniel White as an adjuster to Iwaskow's case.  Docket No. 60 at 5, ¶ 10.  In reviewing Iwaskow's case, White noted the other driver was 100% at fault and that $48,000 seemed like a low estimate for five years of medical treatment.  *Id.*, ¶ 11.  On August 28, 2020, White requested surveillance and a social media report for Iwaskow.  *Id.* at 5-6, ¶ 12.[6]

On August 28, September 25, and October 27, 2020, Safeco sent counsel letters inquiring about Iwaskow's treatment and injuries and the timing of a UIM demand and offered to independently secure Iwaskow's medical records.  Docket No. 55 at 8, ¶¶ 37-39.  On October 14, 2020, Safeco interviewed Iwaskow for a second time.[7]  Docket No. 60 at 6, ¶ 17.

---

[4] Iwaskow erroneously states the date as August 19, 2019.  Docket No. 60 at 5, ¶ 8; *see* Docket No. 55-6 at 10.

[5] Iwaskow includes this fact in his statement of disputed facts, Docket No. 60 at 5, ¶ 8, but Safeco admits this fact is undisputed.  Docket No. 62 at 3, ¶ 8.

[6] Safeco admits these facts as undisputed.  Docket No. 62 at 3, ¶¶ 10-12.

[7] Iwaskow includes this fact in his statement of disputed facts, Docket No. 60 at 6, ¶ 17, but Safeco admits this fact is undisputed.  Docket No. 62 at 4, ¶ 17.

On October 28, 2020, Iwaskow submitted a demand to Safeco for the policy limit, $500,000, in UIM coverage. Docket No. 55 at 8, ¶ 40. On October 29, 2020, Safeco responded to Iwaskow, requesting information not contained in the UIM demand and requesting that Iwaskow submit to two independent medical examinations ("IMEs"), orthopedic and neuropsychological, to properly evaluate Iwaskow's claimed injuries. *Id.*, ¶ 41. The same day, counsel responded, stating that he would ask his office to obtain the missing documents, but said it was unlikely that they would be obtained before Iwaskow filed suit to protect the statute of limitations. *Id.*, ¶ 42. Nevertheless, Safeco evaluated the information it had and made offers to settle.[8] *Id.* at 9, ¶ 43. Iwaskow provided some records to Safeco on November 4, and November 12, 2020.[9] Docket No. 60 at 6, ¶ 21. On November 18, 2020, Iwaskow filed this case in the District Court of Boulder County, Colorado. Docket No. 55 at 9, ¶ 44.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over

---

[8] Iwaskow denies that Safeco evaluated his claim because such evaluation was incomplete and only offered a compromise. Docket No. 60 at 4, ¶ 43. Iwaskow does not deny that Safeco evaluated the information it had and made settlement offers. Thus, the Court will deem this fact admitted.

[9] Iwaskow includes this fact in his statement of disputed facts, Docket No. 60 at 5, ¶ 8, but Safeco admits this fact is undisputed. Docket No. 62 at 3, ¶ 8.

material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Iwaskow brings claims for declaratory judgment, breach of contract, specific performance, and unlawful delay and refusal to pay UIM coverage benefits under Colo. Rev. Stat. § 10-3-115 and 10-3-1116. Docket No. 5 at 3-5. Safeco moves for summary judgment on Iwaskow's statutory bad faith claim. Docket No. 55 at 10-11.

6

material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Iwaskow brings claims for declaratory judgment, breach of contract, specific performance, and unlawful delay and refusal to pay UIM coverage benefits under Colo. Rev. Stat. § 10-3-115 and 10-3-1116. Docket No. 5 at 3-5. Safeco moves for summary judgment on Iwaskow's statutory bad faith claim. Docket No. 55 at 10-11.

A. <u>Statutory Bad Faith</u>

Section 10-3-1115 of the Colorado Revised Statutes provides that "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). Generally, "an insurer's obligation to pay [UIM] benefits is . . . triggered by exhaustion of the tortfeasor's limits of . . . legal liability coverage." *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 989 (Colo. App. 2015) (quotations and citation omitted). To prove a statutory bad faith violation, a plaintiff must show that: (1) benefits were owed under the policy; and (2) defendant unreasonably delayed or denied payment of plaintiff's claim. *See* Colo. Rev. Stat. § 10-3-1115; *Edge Construction, LLC v. Owners Ins. Co.*, No. 14-cv-00912-MJW, 2015 WL 4035567, at *6 (D. Colo. June 29, 2015) ("[I]n order to prevail on its statutory unreasonable delay/denial claim, [plaintiff] first has to prove entitlement to benefits."). A statutory bad faith claim fails where the delay or denial of coverage was reasonable. *American Fam. Mut. Ins. Co. v. Hansen*, 375 P.3d 115, 117 (Colo. 2016).

Safeco argues that the undisputed facts demonstrate Safeco did not unreasonably delay or deny payment of a covered UIM benefit to Iwaskow because Safeco repeatedly sought information from plaintiff and, when Iwaskow eventually sent his demand, Safeco immediately responded and requested more information. Docket. No. 55 at 11. Safeco argues that Iwaskow has not shown any unreasonable conduct by Safeco. *Id.* Iwaskow responds that Safeco's conduct should be analyzed in four different periods: "(i) Safeco's conduct before it received Plaintiff's demand (the 'pre demand package phase'), (ii) Safeco's conduct after it received Plaintiff's demand and for 21 days until

7

litigation was commenced (the 'post demand package, pre litigation phase'); (iii) Safeco's conduct after litigation was commenced but before Iwaskow had undergone the independent medical exams ('IMEs') demanded by Safeco (the 'post litigation, pre IME phase'); and (iv) after the IME reports were received by Safeco (the 'post litigation, post IME phase')." Docket No. 60 at 9 (emphasis omitted). Iwaskow argues that Safeco acted unreasonably during each of these periods. *Id.* at 9-19.

### B. Conduct Before Iwaskow's Demand

Iwaskow argues that Safeco acted unreasonably after the accident, but before Iwaskow submitted his demand.[10] Docket No. 60 at 9-10. Iwaskow argues Safeco had a "responsibility to conduct a reasonable investigation from the date it was informed of the accident 'based on all available information' it possessed," *id.* (quoting Colo. Rev. Stat. § 10-3-1104(1)(h)(IV)), and that Safeco's investigation was not adequate and fair because Safeco aimed to undermine Iwaskow's disclosures instead of aiming to corroborate them. *Id.* at 10-11. Safeco argues that Iwaskow fails to identify any evidence that Safeco performed an unreasonable investigation before Iwaskow submitted his claim. Docket No. 62 at 5-6. "The reasonableness of an investigation is determined objectively under industry standards" which can be established through expert opinions or state law. *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890 (10th Cir. 2016). Iwaskow's arguments fail for two reasons. First, because he does not identify why Safeco had a duty to investigate before Iwaskow submitted a claim, and second, Iwaskow fails to explain why the investigation Safeco did before he submitted

---

[10] Based upon the other undisputed facts, the Court interprets the "demand" to constitute Iwaskow's claim for UIM benefits.

his claim was unreasonable.

It is undisputed that Iwaskow's accident occurred on December 4, 2015, Docket No. 55 at 3, ¶ 1; on September 11, 2017, counsel informed Safeco that the tortfeasor's policy limit was $25,000 and that Iwaskow had incurred $13,000-$14,000 in medical bills at that point, *id.* at 5, ¶ 15; Between August 30, 2018 and July 22, 2020, Safeco sent counsel 18 letters requesting the information it previously requested. *id.* at 6-7, ¶¶ 22-34; Iwaskow did not inform Safeco that his medical bills exceeded $25,000 before August 19, 2020, *see* Docket No. 60 at 4-5, ¶¶ 4-8; on August 19, 2020, Iwaskow informed Safeco that his medical bills had increased to $48,000; *id.* at 5, ¶ 8; on September 25, 2020, Safeco did not have Iwaskow's medical bills and offered to obtain them, Docket No. 55 at 8, ¶ 38; on October 28, 2020, Iwaskow submitted a demand to Safeco for $500,000 in UIM benefits, *id.*, ¶ 40; on October 29, 2020, Safeco requested two IMEs after being presented with Iwaskow's claim, *id.*, ¶ 41; Safeco offered Iwaskow a settlement within the 21 days after Iwaskow submitted his claim, but before Iwaskow filed suit, *id.* at 8-9, ¶¶ 41-44.

First, Iwaskow fails to identify what duty Safeco had to Iwaskow before he submitted a claim. Iwaskow argues Safeco had a duty to perform a reasonable investigation starting at the time Iwaskow notified Safeco of the accident. Docket No. 60 at 9-11. Iwaskow cites Colo. Rev. Stat. § 10-3-1104(1)(h)(IV) in support of this statement. *See Id.* Section 10-3-1104(1)(h)(IV) states in that an unfair claim settlement practice is "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information." This language does not support Iwaskow's assertion that a duty to investigate arises before a claim is filed. Section 10-3-1115 of the Colorado Revised

9

Statutes states that an insurer "shall not unreasonably delay or deny payment of a claim." Colo. Rev. Stat. § 10-3-1115(1)(a). Courts have ruled that an insurer is not under a duty to investigate before receiving a claim for payment despite being informed of the probability of plaintiff making a UIM claim. *See, e.g., Williams v. Owners*, 621 F. App'x 914, 919 (10th Cir. 2015) (unpublished); *Culichia v. Safeco Ins. Co. of Am.*, No. 18-cv-00977-DDD-KMT, 2019 WL 4464551, at *5 (D. Colo. Sept. 18, 2019) (finding no "statutory duty to investigate" before a claim is filed).

Additionally, Iwaskow does not provide any indication that he informed Safeco that his medical bills exceeded the tortfeasor's 25,000 policy limit until August 2020, further undermining his assertion of a duty to investigate. *See* Docket No. 60 at 4-5, ¶¶ 4-5, 8. Generally, "an insurer's obligation to pay [UIM] benefits is . . . triggered by exhaustion of the tortfeasor's limits of . . . legal liability coverage." *Fisher*, 419 P.3d at 989 (quotations and citation omitted). Iwaskow indicates that he informed Safeco his bills exceeded the tortfeasor's $25,000 limit on August 19, 2020, two and a half months before he made his UIM demand. Docket No. 60 at 5, ¶ 8. To the extent Iwaskow informing Safeco his medical bills exceeded the tortfeasor's limit triggered a duty to investigate, Iwaskow has not introduced any industry standard that Safeco violated by failing to investigate during the short time between when Iwaskow notified Safeco of bills exceeding $25,000 and his demand.

Second, even assuming Safeco had a duty to investigate beginning in 2015 as Iwaskow claims, Iwaskow does not identify what Safeco failed to do to meet its duty to investigate. It is undisputed that Safeco did not receive medical records it requested from Iwaskow until Iwaskow sent his demand; *see* Docket No. 55 at 7-8, ¶¶ 34-40;

Safeco requested Iwaskow's medical records for years and even offered to obtain the records itself, *id.* at 6-8, ¶¶ 22-34, 39; Safeco interviewed Iwaskow twice before he submitted a claim, but apparently received no records in connection with such interviews, Docket No. 60 at 4, 6, ¶¶ 3, 17; by August 19, 2020, Iwaskow had only told Safeco that he had incurred $48,000 in medical bills, *id.* at 5, ¶ 8; and Iwaskow submitted a claim for $500,000 two months later. Docket No. 55 at 8, ¶¶ 38-40.

Iwaskow argues that Safeco's investigation was inadequate because Safeco did not request an IME before Iwaskow submitted his claim. *Id.* at 10. In the case Iwaskow cites, *Peden*, the Tenth Circuit observed that the insurer valued plaintiff's claim at 43% of the amount in her demand letter and failed to include any amount for future injuries in its valuation of plaintiff's claim. *Peden*, 841 F.3d at 893. As result, the court found that "a fact-finder could justifiably question the reasonableness of [defendant's] investigation." *Id. Peden* noted that defendant did not interview plaintiff, consult with a physician, or ask plaintiff to submit to a physical examination. *Id.* Here, before Iwaskow submitted a demand, Safeco had no access to Iwaskow's medical records, although it made numerous efforts over almost five years to obtain them. Without such records, Safeco could not have made an informed decision about whether an IME was needed and, if so, what type of IME. That Safeco's investigation was hampered by the lack of medical records is illustrated by the fact that, once Iwaskow provided Iwaskow's medical records along with his demand, Safeco's review of such records enabled it to quickly determine the need for two types of IMEs. Docket No. 55 at 8, ¶ 41. Under these circumstances, where Iwaskow continually and unexplainably failed to provide medical

11

records, no reasonable jury could find Safeco's investigation before Iwaskow submitted his claim to be unreasonable.

Iwaskow also argues that Safeco's investigation tactics were unfair, which made the investigation unreasonable. Iwaskow asserts that, "[a]lthough Safeco undertook some investigative efforts prior to receipt of the Demand Package, these were meant to undermine, rather than corroborate, Iwaskow's disclosures," noting that Safeco hired a firm to surveil Iwaskow's home, conducted a social media investigation of Iwaskow's family, and prepared a bodily injury evaluation while Safeco's adjuster "falsely communicated to Iwaskow" that he could not complete a bodily injury evaluation without experts. Docket No. 60 at 11. However, Iwaskow does not demonstrate a genuine issue of material fact regarding Safeco's unreasonableness regarding these techniques. First, Iwaskow does not identify any prejudice to himself or to his claim. Second, the undisputed facts show that, on August 28, 2020, the adjuster recently assigned to the matter concluded that Iwaskow having only $48,000 of medical bills after five years of treatment was low. *Id.* at 5, ¶ 11. He therefore ordered surveillance and a social media search. *Id.* at 5-6, ¶ 12. Iwaskow does not dispute that only having $48,000 of medical bills after almost five years of treatment was suspicious. The fact Safeco conducted surveillance and a social media search was not unreasonable under the unusual circumstances.

Iwaskow claims that insurers "must 'diligently search for evidence which supports [the] insured's claim and not merely seek evidence upholding its own interests.'" *Id.* at 11 (quoting *Ramos v. State Farm Mut. Ins. Co.*, No. 19-cv-01634-KMT, 2020 WL 6134901, at *10 (D. Colo. Oct. 19, 2020)). Iwaskow does not explain what evidence

Safeco was supposed to seek through its investigation before Iwaskow made his demand, especially when Iwaskow repeatedly declined to provide his medical records at Safeco's request and Safeco offered to independently obtain Iwaskow's medical records.  Docket No. 55 at 6-8, ¶¶ 22-35, 38.  In the cases Iwaskow cites, the insurer refused to investigate evidence that was a part of an existing claim.  Docket No. 60 at 11 (citing *Thompson v. State Farm Auto. Ins. Co.*, 457 F. Supp. 3d 998, 1004-05 (D. Colo. 2020) (observing "a reasonable jury could conclude that defendant's failure to obtain additional relevant information, despite its claims adjuster's directive to do so, did not constitute an adequate and fair investigation based on all available information"); *Ramos*, 2020 WL 6134901, at *9-10 (observing a failure to speak to an insured during the claims adjustment process or to request a medical record review of submitted bills raised a genuine dispute of material facts as to whether defendant conducted a reasonable investigation)).  Neither *Thompson* nor *Ramos* supports Iwaskow's argument that Safeco performed an unfair or inadequate investigation before Iwaskow made a claim.  Additionally, Iwaskow only claimed $48,000 in medical bills before he submitted his claim despite stating he was undergoing treatment for almost five years.  Under the circumstances, no factfinder could find that Safeco's investigation tactics were unfair.

The Court agrees with Safeco that Iwaskow cannot show any dispute of material fact showing unreasonable behavior by Safeco before Iwaskow filed a claim.

### C. Post Demand Pre Litigation Conduct

Iwaskow argues that Safeco's conduct after Iwaskow filed a claim on October 28, 2020, but before Iwaskow filed suit on November 18, 2020, was unreasonable.  Docket

13

No. 60 at 12-16.  Safeco argues that the undisputed facts show that it was not unreasonable to fail to pay Iwaskow's demand before litigation was filed, to offer a settlement below Iwaskow's request, or to refuse to evaluate the claim without an IME.  Docket No. 55 at 13-17.

It is undisputed that one day after Safeco received Iwaskow's demand on October 28, 2020, *id.* at 8, ¶ 40, Safeco requested medical information missing from the information that Iwaskow supplied and asked Iwaskow to submit to two IMEs, *id.*, ¶ 41; on October 29, 2020, counsel responded to Safeco's request for additional documentation by stating "it was unlikely [the documents] would be obtained before Plaintiff filed suit to protect the statute of limitations," *id.*, ¶ 42; Iwaskow sent Safeco additional records on November 4 and November 12, 2020, Docket No. 60 at 12; six days before filing this case, counsel requested Safeco evaluate Iwaskow's claim with incomplete information, Docket No. 55 at 9, ¶ 43; and that Safeco offered to settle Iwaskow's claim before Iwaskow filed suit.  *Id.*

Iwaskow argues that, even though Safeco only had 21 days to evaluate Iwaskow's claim before Iwaskow filed suit, Safeco acted unreasonably in not fully evaluating Iwaskow's claim, despite receiving the additional records that Safeco requested.  Docket No. 60 at 12.  Instead, Iwaskow states that Safeco merely offered to settle Iwaskow's claim for an amount not related to the value of Iwaskow's demand, which "is a classic example of an insurer unlawfully '[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.'"  *Id.* (quoting Colo. Rev. Stat. § 10-3-1104(1)(h)(IV)).  Iwaskow argues that a jury could make a finding of

14

unreasonableness because "[b]inding precedent from the Tenth Circuit demonstrates that time-sensitive demands of very limited duration do not invalidate first party insurance bad faith claims." *Id.* at 13.  The Court disagrees.  First, Iwaskow cites Tenth Circuit cases that do not apply Colorado's bad faith law.  *See id.* (citing *Roberts v. Printup*, 595 F.3d 1181 (10th Cir. 2010) (applying Kansas law); *Torrez v. State Farm Mut. Auto. Ins. Co.*, 705 F.2d 1192 (10th Cir. 1982) (applying Kansas law)).  Second, after Iwaskow's demand, Safeco responded the next day by asking for more records.  When Iwaskow requested that Safeco evaluate the claim before Iwaskow supplied the requested records, Safeco provided a settlement offer.  Thus, this is not a case where an insurer failed to respond to a time-sensitive demand.  Third, it is undisputed that the reason Iwaskow's demand was time sensitive was because the statute of limitations was going to run on his claim.  Docket No. 55 at 8, ¶ 42.  It is disingenuous to argue that it was unreasonable for Safeco not to provide a fully informed evaluation of Iwaskow's claim in 21 days when Iwaskow caused the urgency by waiting years to file his UIM claim and thereby ran up against the statute of limitations.  *See Villa Maison Homeowners Ass'n, Inc. v. Owners Ins. Co.*, No. 17-cv-01542-RM-KMT, 2018 WL 11182673, at *4 (D. Colo. July 9, 2018) (finding no plausible allegations of delay where plaintiff waited 21 months to inform defendant of a loss and make a claim for that loss and the plaintiff filed suit three months after making a claim).

Next, Iwaskow argues that it was unreasonable for Safeco to refuse to fully evaluate Iwaskow's claim without IMEs because "it strains credulity" to think Safeco's adjuster could not determine whether Iwaskow's treatment is compensable without an examination.  Docket No. 60 at 14-16.  First, Iwaskow provides no authority to support

15

his proposition that a single settlement offer Iwaskow disagrees with constitutes a failure to evaluate his claim.  *See Sw. Nurseries, LLC v. Florists Mut. Ins., Inc.*, 266 F. Supp. 2d 1253, 1259 (D. Colo. 2003) ("If an insurance company risks a bad faith claim for failing to make a settlement offer deemed acceptable by the insured, then the price of peace becomes total capitulation.").  Second, Iwaskow provides no authority suggesting it is unreasonable to request or require IMEs, especially when, to Safeco's knowledge at the time, the cost of Iwaskow's medical care went from $48,000 to $500,000 in the span of two and one-half months.  Iwaskow does not cite any industry standard or caselaw to support his claim that it was unreasonable to request two IMEs or to provide a settlement that was not based on medical information that Safeco either did not have or which Safeco had only just received.

Under Colorado law, there is no brightline rule for the length of time that constitutes per se unreasonable delay in evaluating a claim, but the Tenth Circuit has observed that, where an insurance company requested more information 24 days after receiving a demand and presented a settlement offer 46 days after receiving the demand, no reasonable jury could find the insurer unreasonably delayed investigating the claim. *Williams*, 621 F. App'x at 920.

Here, where Safeco did not finish evaluating Iwaskow's incomplete claim in 21 days based on urgency that Iwaskow created, like in *Williams*, no fact finder could find Safeco acted unreasonably.  The Court agrees with Safeco that Iwaskow fails to show any dispute of material fact over whether Safeco unreasonably investigated his claim before Iwaskow filed this action.

D. <u>**Post Litigation Conduct**</u>

Iwaskow argues that Safeco's conduct after filing suit constitutes bad faith. Docket No. 60 at 16-19. Iwaskow does not claim Safeco was required to negotiate a settlement after litigation commenced, but does maintain that Safeco was required to investigate his claim and tell Iwaskow of the results of its assessments. *Id.* at 16-17. Safeco responds that it was under no obligation to pay Iwaskow's claim once litigation began. Docket No. 55 at 18.

"[A]n insurer's derivative duty to negotiate, settle, or pay an insured's claim is suspended when two elements are present: (1) an adversarial proceeding is filed, and (2) a genuine disagreement as to the amount of compensable damages exists." *Rabin v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1113 (D. Colo. 2012) (applying Colorado law). Evidence of an insurer's conduct during litigation is admissible to show a "consistent pattern of maltreatment" where "admitting evidence of the conduct at issue does not state a new cause of action, change the theories of the claims, or cure a defective pleading" and the "conduct is instead 'merely a continuation of the same difficulties that preceded the filing of the complaint.'" *Id.* at 1115 (quoting *Southerland v. Argonaut Ins. Co.*, 794 P.2d 1102, 1106 (Colo. App. 1990)).

Iwaskow implies that Safeco was not communicative or diligent in its attempts to investigate Iwaskow's claim. Iwaskow argues "it is for the jury to decide whether defendant did in fact follow up with plaintiff's providers, whether defendant's actions in doing so were reasonable, and whether defendant should have taken further action when it encountered difficulty with obtaining plaintiff's medical records." Docket No. 60 at 17 (quoting *Dale v. Country Preferred Ins. Co.*, No. 19-cv-01991-PAB-SKC, 2021 WL

17

2935946, at *10 (D. Colo. July 13, 2021)). *Dale*, however, did not involve litigation conduct. *See* 2021 WL 2935946, at *3-5. Moreover, Safeco made compromise settlement offers on November 18, 2020 and April 12, 2022, Docket No. 60 at 7, ¶ 26, and two defense experts completed examinations of plaintiff on March 13, 2021 and February 4, 2022 and sent Safeco their reports on April 30, 2021 and February 20, 2022, respectively. *Id.* at 7-8, ¶¶ 27-28. Iwaskow does not explain why, in an adversarial posture where Safeco is producing discovery and disclosing expert reports, these actions show a lack of diligence or communication by Safeco. In any event, since the Court has found that Iwaskow is entitled to summary judgment because its pre-litigation conduct was not unreasonable, the litigation conduct Iwaskow complains of, by itself, cannot establish a pattern of unreasonable conduct that would make it relevant once the lawsuit has commenced. *Rabin*, 863 F. Supp. 2d at 1113; *Pace v. Travelers Home and Marine Ins. Co.*, No. 20-cv-01507-NYW, 2020 WL 6393035, at *2-3 (D. Colo. Nov. 2, 2020) (dismissing claim where plaintiff only alleged bad faith based on defendant's action after plaintiff filed suit).

### E. MedPay

Iwaskow argues that Safeco was required to pay him $5,000 in UIM benefits, regardless of the status of the remainder of his UIM claim, because Safeco determined he had $5,000 of reasonable medical expenses when it provided MedPay benefits and Safeco may not offset its duty to pay UIM benefits with MedPay payments. Docket No. 60 at 19. "MedPay and UM/UIM benefits overlap but are not duplicative. MedPay coverage pays for reasonable medical expenses regardless of fault. UM/UIM coverage, in contrast, compensates an insured for loss resulting from liability imposed by law for

bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle." *Calderon v. Am. Fam. Mut. Ins. Co.*, 383 P.3d 676, 679 (Colo. 2016) (internal citations and quotations omitted). MedPay provides "overlapping, but not duplicative, coverage." *Id.* Iwaskow correctly notes that MedPay may not be used to offset UIM coverage, but Iwaskow cites no authority for the proposition that Safeco must make a *Fisher* payment matching the MedPay amount when Iwaskow's medical costs are otherwise disputed. *See Stanley v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-00996-NYW-NRN, 2023 WL 2479953, at *10 (D. Colo. Mar. 13, 2023) (finding MedPay notes and evaluations of some medical bills before a claim was filed insufficient to show plaintiff was owed benefits for non-economic damages before filing a claim). "[A]n insurer's evaluation of a claim at any particular time does not constitute an undisputed amount which must be paid under the policy." *Id.* (quoting *Nyborg v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01918-RM-KLM, 2021 WL 662305, at *7 (D. Colo. Feb. 19, 2021), *report and recommendation adopted*, 2021 WL 1115936 (D. Colo. Mar. 24, 2021)). Iwaskow does not provide any support for his theory that MedPay payments are an admission of UIM coverage.

The Court will grant Safeco's partial summary judgment as to Iwaskow's statutory bad faith claim because Iwaskow has not shown a genuine issue of material fact that Safeco acted unreasonably.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Partial Summary Judgment and Memorandum Brief in Support [Docket No. 55] is **GRANTED**. It is further

19

**ORDERED** that plaintiff's fourth claim for statutory bad faith is **DISMISSED with prejudice**.

DATED September 29, 2023.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge