IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00005-PAB-SBP

MATTHEW IWASKOW,

   Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA,

   Defendant.
_____

**ORDER**
_____

This matter is before the Court on Defendant Safeco Insurance Company of
America's Rule 702 Motion to Exclude and/or Limit Testimony of Plaintiff's Expert
Witness Dr. Jeffery D. Petersohn [Docket No. 172].  Plaintiff responded, Docket No.
182, and defendant replied.  Docket No. 194.  The Court has jurisdiction pursuant to 28
U.S.C. § 1332.

**I.  BACKGROUND**

Plaintiff Matthew Iwaskow was injured in a car accident on December 4, 2015.
Docket No. 5 at 2, ¶ 5.  Mr. Iwaskow filed suit against his insurance company,
defendant Safeco Insurance Company of America ("Safeco"), in state court, which
lawsuit Safeco removed to federal court on January 4, 2021.  Docket No. 1 at 1.  Mr.
Iwaskow seeks insurance proceeds that he alleges he is entitled to under his policy's
underinsured motorist bodily injury coverage.  Docket No. 5 at 5–6.  Trial in this case
was originally set for June 20, 2023.  Docket No. 68 at 1.  However, trial was

rescheduled for February 12, 2024, Docket No. 76, and was again rescheduled for

December 16, 2024.  Docket No. 160.

Discovery closed in this case on November 14, 2022.  Docket No. 67 at 8.  On

November 27, 2023, Safeco filed a Federal Rule of Evidence 702 motion seeking to

exclude three opinions of Mr. Iwaskow's retained medical expert, Dr. Jeffery Petersohn,

namely, (1) that Mr. Iwaskow is suffering from radicular nerve pain that is caused by a

herniated disc and by a damaged vertebral endplate; (2) that Mr. Iwaskow should have

fusion surgery to ameliorate his pain; and (3) that a herniated disc in Mr. Iwaskow's

back causes nerve impingement.  Docket No. 81 at 15.  On February 2, 2024, the Court

granted in part and denied in part Safeco's motion.  Docket No. 149 at 20.  The Court

found that Mr. Iwaskow had failed to demonstrate the reliability of Dr. Petersohn's

opinion that Mr. Iwaskow's herniated disc is impinging a nerve.  *Id.* at 11.  The Court

also found that Mr. Iwaskow had failed to show that Dr. Petersohn's opinion that Mr.

Iwaskow had endplate damage was based on sufficient data and a reliable diagnostic

method.  *Id.* at 13–14.  Therefore, the Court concluded that Dr. Petersohn could testify

that Mr. Iwaskow had a herniated disc, but that he could not testify that the herniated

disc was impinging a nerve or that Mr. Iwaskow's pain was caused by damage to his

endplate.  *Id.* at 14.  However, the Court found admissible Dr. Petersohn's opinions that

Mr. Iwaskow's accident caused his injuries and that a fusion surgery could ameliorate

Mr. Iwaskow's pain.  *See id.* at 15–20.

On December 20, 2023, Mr. Iwaskow filed a motion asking the Court to allow Mr.

Iwaskow to disclose recent medical records concerning Mr. Iwaskow's pending back

surgery.  Docket No. 86 at 2–8.  In addition, he asked that the Court permit Dr.

Petersohn to testify at trial about the significance of this new evidence and the necessity of the surgery to ameliorate injuries Mr. Iwaskow attributes to the car accident.  *Id.*  The Court denied the motion, finding that the disclosure of this evidence so close to the February 12, 2024 trial would prejudice Safeco.  Docket No. 95 at 8.  The trial was later vacated due to a criminal trial set on the same day and was reset for December 16, 2024.  Docket No. 158.  Mr. Iwaskow then renewed his motion seeking to reopen discovery.  Docket No. 161.  Given the continuance of the trial, the Court found that Safeco now had sufficient time to complete the additional discovery necessary to cure any prejudice to it from Mr. Iwaskow's new disclosures and therefore granted Mr. Iwaskow's motion to reopen discovery.  Docket No. 165.

In its order reopening discovery, the Court ordered Mr. Iwaskow to "produce to defendant all previously undisclosed medical records, documents concerning plaintiff's surgery, and records from plaintiff's treating providers."  *Id.* at 11.  The Court further ordered that, "[b]y June 19, 2024, plaintiff shall supplement his expert disclosures with any opinions related to recent recommendations by Mr. Iwaskow's treating physicians that he undergoes disc arthroplasty or fusion surgery."  *Id.*  The Court required the parties to "submit to Magistrate Judge Susan Prose proposed amendments to the final pretrial order in the form of suggested deadlines to complete additional discovery, to file additional discovery objections or motions, and to file any Rule 702 challenges based on the new discovery and supplemental expert reports."  *Id.*

On July 22, 2024, Judge Prose granted Safeco's request for it to conduct a second Independent Medical Exam ("IME") of Mr. Iwaskow and set deadlines for the parties to file Rule 702 motions.  Docket No. 168 at 1–2.  Judge Prose ordered Dr.

Jeffrey Sabin, Safeco's retained medical expert, to submit a report on the second IME on or before September 23, 2024. *Id.* at 2. She further ordered that "[a]ny response to Dr. Sabin's report – strictly limited to the information and opinions set forth therein – shall be submitted on or before October 14, 2024." *Id.* (emphasis omitted). Judge Prose further permitted each side to conduct a deposition of the other side's medical expert regarding the second IME. *Id.* Judge Prose set an October 31, 2024 deadline for "[a]ny motions pursuant to Federal Rule of Evidence 702 *concerning the opinions related to the second IME only*." *Id.* "The deadline for all other motions pursuant to Federal Rule of Evidence 702 remains October 7, 2024." *Id.* The Court interprets Judge Prose's order to mean that motions to exclude opinions in Dr. Petersohn's June 9, 2024 supplemental expert report and opinions in any rebuttal report Dr. Sabin may have provided prior to the second IME were due on October 7, 2024. However, the parties were permitted to move to exclude opinions based on the results of Mr. Iwaskow's second IME by October 31, 2024.

On October 14, 2024, Dr. Petersohn wrote a supplemental expert report responding to Dr. Sabin's report on Mr. Iwaskow's second IME. Docket No. 172-8. On October 31, 2024, Safeco filed its motion to exclude three opinions in Dr. Petersohn's supplemental report and mentioned in Dr. Petersohn's deposition regarding the second IME. Docket No. 172 at 1. First, Safeco asks the Court to exclude Dr. Petersohn's opinion that Mr. Iwaskow has endplate fractures on the grounds that the Court has already excluded this opinion.[1] *Id.* at 7. Safeco also seeks to exclude Dr. Petersohn's

---

[1] Safeco also seeks to exclude Dr. Petersohn's herniated disc is impinging a nerve. Docket No. 172 at 7. However, Dr. Petersohn's October 14, 2024 report only discusses Mr. Iwaskow's herniated disc, it does not

opinions that (1) Mr. Iwaskow has a painful radial annular tear caused by trauma and (2)

Mr. Iwaskow's surgery was necessitated by the injuries that were caused by the 2015

accident.  *Id.* at 8–15; *see also* Docket No. 172-8 at 4–5.

## II.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if the proponent
> demonstrates to the court that it is more likely than not that: (a) the expert's
> scientific, technical, or other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the testimony
> is based on sufficient facts or data; (c) the testimony is the product of reliable
> principles and methods; and (d) the expert's opinion reflects a reliable application
> of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91

(1993).  If challenged by a party opposing the testimony of an expert witness, "[Rule]

702 imposes upon the trial judge an important 'gate-keeping' function with regard to the

admissibility of expert opinions."  *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297,

1307 (10th Cir. 2015) (citation omitted).  However, "[t]he proponent of expert testimony

bears the burden of showing that its proffered expert's testimony is admissible."  *United*

*States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).  "[T]he proponent has the

burden of establishing that the pertinent admissibility requirements are met by a

preponderance of the evidence."  *Id.* (quoting Fed. R. Evid. 702 advisory committee's

note (2000)).

---

mention that the disc is pinching a nerve.  *See* Docket No. 172-8.  Moreover, the Court
has already excluded this opinion and Mr. Iwaskow states that he "is not seeking to
resuscitate the opinion on nerve impingement."  Docket No. 182 at 5 n.2.

To determine whether an expert opinion is admissible, the court must perform "a two-step analysis." *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022); *see also 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). First, the court must determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *Roe*, 42 F.4th at 1180 (quoting Fed. R. Evid. 702).

Second, if the expert is sufficiently qualified, the proffered opinions must be assessed for reliability. *Id.* at 1180–81; Fed. R. Evid. 702(b)–(d) (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case"). To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592–93). In assessing whether a methodology is reliable, a court may consider several non-dispositive factors, including "(1) whether the theory can be tested; (2) whether it is subject to peer review and publication; (3) the known or potential error rate; (4) the existence and maintenance of standards; and (5) the general acceptance in the relevant scientific community." *United States v. Foust*, 989 F.3d 842, 845 (10th Cir. 2021) (citing *Daubert*, 508 U.S. at 593-94). However, courts have "broad discretion to consider a variety of other factors." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217 (10th Cir. 2016). Next, the court must assess whether the expert used sufficient facts and data as required by the methodology and whether the expert reliably applied the methodology to the facts of the

case. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1223 (D. Colo. 2008)*; see also Roe*, 42 F.4th at 1181. To demonstrate the reliability of an opinion that is based solely on an expert's experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes). Establishing reliability does not require showing that the expert's testimony is indisputably correct. *United States v. Pehrson*, 65 F.4th 526, 540 (10th Cir. 2023); *see also Goebel v. Denver & Rio Grande W. R.R. Co.,* 346 F.3d 987, 991 (10th Cir. 2003) (discussing how the opinion is tested against the standard of reliability, not correctness). However, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Roe*, 42 F.4th at 1181. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Under Rule 702, a court must also ensure that the proffered testimony is relevant and will assist the trier of fact. *See id.* at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122–23 (10th Cir. 2006). "Relevant expert testimony must logically advance[ ] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted). In assessing whether

7

expert testimony will assist the trier of fact, a court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'"  *Id.* at 476–77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

## III.  ANALYSIS

Safeco does not challenge Dr. Petersohn's qualifications to provide the expert medical opinions contained in his October 14, 2024 report.  *See generally* Docket No. 172.  Safeco challenges whether three opinions in Dr. Petersohn's October 14, 2024 expert report are based on sufficient facts and data, are the products of reliable principles and methods, and reflect a reliable application of those methods to the facts of this case.  Therefore, the Court will determine whether the opinions found in Dr. Petersohn's October 14, 2024 report are sufficiently reliable.  *Roe*, 42 F.4th at 1181.

### A.  Opinion that Plaintiff has Endplate Damage

The Court previously excluded Dr. Petersohn's opinion that Mr. Iwaskow has endplate damage because Mr. Iwaskow failed to demonstrate that this opinion was based on sufficient evidence and a reliable methodology.  Docket No. 149 at 13–14. Reviewing Dr. Petersohn's earlier expert reports, the Court found that Dr. Petersohn's opinion that Mr. Iwaskow has endplate damages was based on the following statements: "Modic I changes remain present in all studies in the L5 superior endplate, consistent with possible endplate fracture," Docket No. 81-1 at 5; "aspects of [Mr. Iwaskow's] pain and imaging findings suggest a substantial possibility of co-existing pain of vertebrogenic/discogenic origin," Docket No. 81-2 at 4; and "[s]ome physicians rely upon the presence of Modic type I and II changes in the vertebral endplates as

seen on MRI study that correlate with symptomatic injury and other physicians prefer diagnostic lumbar provocative or analgesic discography to affirm this diagnosis."  *Id.*  The Court found that "Dr. Petersohn's reports assert only that an endplate fracture is possible and do not discuss the likelihood of this possibility."  Docket No. 149 at 14.  The Court also found that Dr. Petersohn's reference to Modic changes, which could be consistent with a "possible endplate fracture," was insufficient to demonstrate that Dr. Petersohn's opinion regarding endplate damage is based on sufficient data and a reliable diagnostic method.  *Id.*

In his June 9, 2024 report, Dr. Petersohn's only reference to endplate damage is his statement that the "vertebral bodies at the vertebral endplates adjacent to the HNP[2] continue to demonstrate endplate fractures."  Docket No. 172-6 at 2 (footnoted added).  In his October 14, 2024 report, Dr. Petersohn states that Mr. Iwaskow has "small vertebral endplate fractures noted in the adjacent vertebral body endplates" and that this could be a source "of pain and symptomatic injury to Mr. Iwaskow's Lumbar intervertebral disc and vertebral bodies."  Docket No. 172-8 at 2.  Dr. Petersohn also opines that "surgery for treatment of a diagnosis of vertebrogenic or discogenic pain established . . . by identification of anatomically painful vertebral endplate fractures . . . represent well-accepted clinical practice."  *Id.* at 3.

---

[2] Dr. Petersohn's report does not define "HNP."  The Court takes judicial notice of the fact that HNP stands for herniated nucleus pulposus, which "is a condition in which part or all of the soft, gelatinous central portion of an intervertebral disk is forced through a weakened part of the disk, resulting in back pain and nerve root irritation" – i.e. a herniated disc.  *Herniated nucleus pulposus*, Med. Encyc., Nat'l Libr. Med., https://medlineplus.gov/ency/imagepages/9700.htm (last visited December 3, 2024); *see Freeman v. City of Cheyenne*, 660 F. Supp. 3d 1155, 1162 (D. Wyo. 2023), *aff'd*, 2024 WL 464069 (10th Cir. Feb. 7, 2024) (taking judicial notice of definition in medical dictionary).

Safeco argues that the Court has already excluded Dr. Petersohn's opinion that Mr. Iwaskow has endplate damage.  Docket No. 172 at 7–8.  Mr. Iwaskow responds that Dr. Peterson's supplemental reports, which include his opinion that Mr. Iwaskow has endplate damage, are made pursuant to Federal Rule of Civil Procedure 26(e)(1). Docket No. 182 at 4.  He claims that "Rule 26(e) of the Federal Rules of Civil Procedure contemplates that new information that was previously unavailable to a party may form a proper basis for the supplementation of an expert report."  *Id.* (quoting *Equal Emp. Opportunity Comm'n v. Chris the Crazy Trader, Inc.*, No. 21-cv-02666-NYW-SKC, 2023 WL 4237086, at *6 (D. Colo. June 28, 2023)).  Mr. Iwaskow asserts that Dr. Petersohn's opinion in his supplemental reports that Mr. Iwaskow has endplate fractures should not be excluded because his opinion is based on additional surgical information that was unavailable when Dr. Petersohn made his initial report.  *Id.*

First, although Mr. Iwaskow now claims that Dr. Petersohn's October 14, 2024 report was made as a supplemental disclosure pursuant to Rule 26(e)(1), the report itself states that it is a response to Dr. Sabin's report on Mr. Iwaskow's second IME. Judge Prose allowed Dr. Petersohn to submit a response to Dr. Sabin's report on Mr. Iwaskow's second IME, "strictly limited to the information and opinions set forth therein," by October 14, 2024.  Docket No. 168 at 2.  Dr. Petersohn's report is dated October 14, 2024, which is past the June 19, 2024 deadline set by the Court for Mr. Iwaskow to supplement Dr. Petersohn's opinions "related to recent recommendations by Mr. Iwaskow's treating physicians that he undergoes disc arthroplasty or fusion surgery." Docket No. 165 at 11; Docket No. 172-8.  As such, there is no indication that this disclosure was made pursuant to anything other than Judge Prose's order, which

"strictly limit[s]" the scope of Dr. Petersohn's response.  Docket No. 168 at 2.  Dr.

Sabin's August 27, 2024 report on Mr. Iwaskow's second IME contains no discussion of

endplate fractures.  *See* Docket No. 172-7.  Moreover, nothing in Dr. Petersohn's report

suggests that his discussion of endplate fractures is in response to anything contained

in Dr. Sabin's report.  *See* Docket No. 172-8.  Therefore, Dr. Petersohn's opinions

regarding Mr. Iwaskow's endplate fractures in his October 14, 2024 report are outside

the scope of Judge Prose's order permitting disclosure of expert opinions on Mr.

Iwaskow's second IME and will be excluded on this basis.

Turning to Dr. Petersohn's statement in his June 9, 2024 report that Mr.

Iwaskow's "vertebral bodies at the vertebral endplates adjacent to the HNP continue to

demonstrate endplate fractures," Docket No. 172-6 at 2, Mr. Iwaskow provides no

support for the proposition that his obligation under Rule 26(e) to supplement

incomplete or incorrect information in an expert report somehow excepts him from the

Court's prior ruling that Dr. Petersohn's opinion is inadmissible.  *See Bowman v. R.L.*

*Young, Inc.*, 2022 WL 3998641, at *3 (E.D. La. Sept. 1, 2022) ("the Court is not aware

of any precedent suggesting that a party's duty to supplement their Fed. R. Civ. P. 26(a)

disclosures somehow categorically trumps the deadlines set forth in the Court's Fed. R.

Civ. P. 16 Scheduling Order"); *Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439,

467 (E.D. Tex. 2020) (a "district court may grant a party leave to supplement an expert's

report after the deadline in the scheduling order has expired, but only if good cause is

shown").  Rule 26(e) states that a party "must supplement or correct its disclosure" in a

"timely manner if the party learns that in some material respect the disclosure or

response is incomplete or incorrect, and if the additional or corrective information has

not otherwise been made known to the other parties during the discovery process or in writing."[3]  Fed. R. Civ. P. 26(e)(1)(A).  In the Court's order reopening discovery, the Court permitted Mr. Iwaskow to "supplement his expert disclosures with any opinions related to recent recommendations by Mr. Iwaskow's treating physicians that he undergoes disc arthroplasty or fusion surgery."  Docket No. 165 at 11.  Nothing in that order permits Dr. Petersohn to supplement opinions that have been excluded by the Court.  *See Bell v. Guardian Auto. Corp.*, 2021 WL 3017987, at *3 (N.D. Ga. Jan. 21, 2021) ("A party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report."); *Goodbys Creek, LLC v. Arch Ins. Co.*, 2009 WL 1139575, at *2 (M.D. Fla. Apr. 27, 2009) ("A report that suffers from a major omission cannot be cured by the use of supplementation." (internal quotations and citation omitted)).  Therefore, the Court will exclude Dr. Petersohn's opinion that Mr. Iwaskow has endplate damage.

Dr. Petersohn's statement that Mr. Iwaskow's "vertebral bodies at the vertebral endplates adjacent to the HNP continue to demonstrate endplate fractures" is an apparent reference to Dr. Petersohn's reading of a December 4, 2023 MRI taken of Mr. Iwaskow's back.  *See* Docket No. 172-6 at 2.  This MRI was unavailable to Dr. Petersohn when he wrote his initial expert reports in this case.  *See* Docket No. 81-1 (dated June 2, 2022); Docket No. 81-2 (dated June 14, 2022).  However, Dr. Petersohn's June 9, 2024 report does not address how his opinion that Mr. Iwaskow has endplate damage is "related to recent recommendations by Mr. Iwaskow's treating

---

[3] Dr. Petersohn's June 9, 2024 supplemental report, as well as his October 14, 2024 report, was written before his October 29, 2024 deposition.  As such, his report was not produced to supplement "information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2).

physicians that he undergoes disc arthroplasty or fusion surgery" and is therefore beyond the scope of the Court's order permitting Dr. Petersohn to supplement his opinions. Docket No. 165 at 11. For this additional reason, the Court will exclude Dr. Petersohn's opinion that Mr. Iwaskow has endplate damage.

### B.  Opinion that Plaintiff has a Radial Annular Tear Caused by Trauma

Safeco argues that, "[b]ecause Dr. Petersohn cannot establish that the annular tear he claims Plaintiff suffered in the 2015 car crash has been the longstanding, and recent, source of Plaintiff's pain, he should not be permitted to opine that Plaintiff's 2024 spinal surgery was necessitated by the 2015 Accident." Docket No. 172 at 11. In its reply, Safeco clarifies that it seeks to exclude three related opinions in Dr. Petersohn's October 14, 2024 report, namely, "Dr. Petersohn's opinions that: (1) Plaintiff's annular tear was caused by trauma from the Accident; (2) Plaintiff's annular tear is a "radial" annular tear as opposed to a "transverse or circumferential" tear; [and] (3) Plaintiff's annular tear is the source of his pain." Docket No. 194 at 7.

Safeco "acknowledges that Plaintiff's MRI reports from 2016 through 2024 . . . [identify] an 'annular tear.'" *Id.* Furthermore, both Dr. Sabin's August 27, 2024 report and Dr. Petersohn's October 14, 2024 report state that Mr. Iwaskow has an annular tear. Docket No. 172-7 at 11–16; Docket No. 172-8 at 4. In his August 27, 2024 report on Mr. Iwaskow's second IME, Dr. Sabin states that "annular fissures generally result from degenerative changes, not trauma or accidents," that an "annular tear, in and of itself, does not present a strong surgical indication," and that "fissures, protrusions, bulges and disc degeneration are not uncommon findings in the asymptomatic general population." Docket No. 172-7 at 17–18. In his October 14, 2024 report, Dr. Petersohn

distinguishes between two types of annular tears.  Docket No. 172-8 at 2.  Dr.

Petersohn states that annular tears of individual collagen fibrils or delamination that

"transverse within the posterior disc annulus" are "rarely and infrequently symptomatic."

*Id.*  However, Dr. Petersohn asserts that an "annular tear that extends from the inside of

the disc (the nucleus) and extends through multiple sheets of collagen into or through

the outer wall of the disc is called a *radial* tear and this is more likely the result of

trauma.  This is frequently associated with neovascularization and neoinnervation of the

annular fissure, causing pain."  *Id.*  Dr. Petersohn opines that the "large area of right

sided L4-5 disc herniation seen on Mr. Iwaskow's most recent L/S MRI undoubtedly

contains a radial tear."  *Id.*  He states that it "is my professional medical opinion that it is

more medically probable that this annular tear or the small vertebral endplate fractures

noted in the adjacent vertebral body endplates, or both, represent the source(s) of pain

and symptomatic injury to Mr. Iwaskow's lumbar intervertebral disc and vertebral

bodies."[4]  *Id.*  The Court finds that Dr. Petersohn's opinion directly refutes Dr. Sabin's

opinion that "an annular fissures is typically a degenerative finding and not a traumatic

finding, meaning annular fissures generally result from degenerative changes, not

trauma or accidents," Docket No. 172-7 at 17, and is therefore within the scope of

Judge Prose's order permitting responses limited to the information and opinions set

---

[4] Safeco argues that Dr. Petersohn's opinion that Mr. Iwaskow's pain is caused
by a radial annual tear is less reliable because Dr. Petersohn states that this
pain could also be caused by endplate fractures.  Docket No. 172 at 9.  Safeco's
argument appears to credit Dr. Petersohn's opinion that Mr. Iwaskow has endplate
damage.  However, Safeco also argues that Dr. Petersohn's opinion that Mr. Iwaskow
has endplate fractures is unsubstantiated.  Because the Court will exclude Dr.
Petersohn's opinion that Mr. Iwaskow has endplate damage, the Court does not find
Safeco's argument that Dr. Petersohn has attributed Mr. Iwaskow's pain to both sources
as a reason to exclude Dr. Petersohn's testimony on Mr. Iwaskow's annular tear.

forth in Dr. Sabin's report.  As such, the Court will consider whether this opinion is sufficiently reliable.

First, Safeco argues that Dr. Petersohn provides no support for the proposition that radial tears are most often the result of trauma.  Docket No. 172 at 10.  Mr. Iwaskow does not respond to this argument.  *See* Docket No. 182 at 6–7.  During his deposition, when asked how he knew that radial tears are more likely the result of trauma than degeneration, Dr. Petersohn responded that "it's been studied," including by Nick Bogduk, Tim Malouff, and Rick Derby.  Docket No. 172-5 at 7–8, 45:23–46:21.  While Dr. Petersohn's report does cite a paper by Nick Bogduk, Dr. Petersohn cites this work for the proposition that High-Intensity Zones on MRI imaging correlate to positive surgical outcomes.  *See* Docket No. 172-8 at 2 (citing C. Aprill & N. Bogduk, *High-Intensity Zone: A Diagnostic Sign of a Painful Lumbar Disc on Magnetic Resonance Imaging*, Brit. J. Radiology (1992)).  This does not support Dr. Petersohn's opinion that radial annular tears are more often caused by trauma.  Dr. Petersohn's report does not refer to studies by Tim Malouff, Rick Derby, or any other studies supporting his theory that radial annular tears are more often caused by trauma.  Dr. Petersohn's reference in his deposition to the fact that the connection between radial annular tears and trauma has "been studied" does not identify any specific support for his opinion.  Although "[a]n expert is not entitled to testify to opinions that rely on the opinion of another expert, simply because the other is an expert," an expert may rely upon another expert's opinion if "the facts or data relied upon [are of] the kind that 'experts in the particular field would reasonably rely on . . . in forming an opinion on the subject.'"  *Vox Mktg. Grp., LLC v. Prodigy Promos L.C.*, 521 F. Supp. 3d 1135, 1144–45 (D. Utah 2021)

(quoting *Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814, 820 (10th Cir. 2010)

(unpublished), and *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 789 (7th Cir.

2017)).  Dr. Petersohn's comment in his deposition that "it's been studied" suggests that

he believes others in the medical community have the opinion that radial annular tears

are caused by trauma and that he is relying on their opinions and research in reaching

his conclusion.  Docket No. 172-5 at 7, 45:23–25.  However, Mr. Iwaskow bears the

burden of demonstrating that Dr. Petersohn's opinion is reliable.  *Abraham v. WPX

Prod. Prods., LLC*, 184 F. Supp. 3d 1150, 1189 (D.N.M. 2016) ("The proponent of the

expert's opinion testimony bears the burden of establishing that the expert is qualified,

that the methodology he or she uses to support his or her opinions is reliable, and that

his or her opinion fits the facts of the case and thus will be helpful to the jury.").  Mr.

Iwaskow has not shown that Dr. Petersohn's opinion that radial annular tears are more

often caused by trauma is reliable because he has not shown that it is based on peer-

reviewed studies, is generally accepted in the medical community, or is otherwise

reliable.  *See Farris v. Intel Corp.*, 493 F. Supp. 2d 1174, 1183–84 (D.N.M. 2007)

("Thus, while Dr. Christensen's general causation opinions regarding sinusitis and

vertigo are not grounded in any methodology identified in the record as tested,

subjected to peer review, and generally accepted in the medical community, much less

any epidemiological or toxicological article, report, or study, his opinion concerning

rhinitis does have recognized support in the medical community."); *Wynacht v.

Beckman Instruments, Inc.,* 113 F. Supp. 2d 1205, 1209 (E.D. Tenn. 2000) (treating

physician not permitted to testify that plaintiff's medical conditions were caused by

chemical exposure where he failed to identify any biochemical, medical, or toxicological

principles or studies to support his conclusions).  Therefore, the Court will exclude Dr.

Petersohn's opinion that Mr. Iwaskow's annular tear is more likely the result of trauma.

Next, Safeco argues that Dr. Petersohn's opinion that Mr. Iwaskow has a radial

annular tear is not supported by sufficient data because Dr. Petersohn's opinion that Mr.

Iwaskow's MRIs show a High-Intensity Zone ("HIZ") is not supported by the rest of Mr.

Iwaskow's medical records.  Docket No. 172 at 10.  In responding to Dr. Sabin's opinion

that Mr. Iwaskow's annular tear is not the likely source of Mr. Iwaskow's pain, Dr.

Petersohn relies on the fact that Mr. Iwaskow's MRIs have an HIZ to identify Mr.

Iwaskow's annular tear as radial and likely painful.  *See* Docket No. 172-8 at 2–3.  Dr.

Petersohn's report states that "Mr. Iwaskow does have a HIZ at the L4-5 HNP that has

been present on each MRI from 2016 to 2024, making it medically probable that his

pain originates from the annular tear and/or from the fractures of the vertebral endplates

that adjoin this disc."  *Id.* at 3.  In his deposition, Dr. Petersohn explained that HIZs on

MRIs have "an increased . . . T2 signal that is the equivalent of the . . . signal seen with

spinal fluid" and that it is "a very bright signal" that usually extends "very far to the back

wall of the disc."  Docket No. 172-5 at 11, 49:2–9.  During his deposition, Dr. Petersohn

indicated where on Mr. Iwaskow's MRIs he believed there was an HIZ, *id.* at 12, 50:5–

25, and Safeco has not challenged Dr. Petersohn's qualifications to read MRIs.  As

such, the Court finds that Dr. Petersohn's opinion that Mr. Iwaskow has an HIZ on his

MRI imaging is based on sufficient facts and data.

Safeco contends that Dr. Petersohn's method of diagnosing Mr. Iwaskow's

annular tear is unreliable because, at Dr. Petersohn's deposition, he stated that an MRI

was insufficient to show that Mr. Iwaskow has a radial annular tear.  Docket No. 172 at

10.  During his deposition, Dr. Petersohn asserted that, in differentiating between a radial and circumferential tear, "in general, if you really want to make the differentiation accurately, the standard would be to do a post-discography CT scan."  Docket No. 172-5 at 19, 66:1–3.  Safeco argues that no post-discography CT scan was taken of Mr. Iwaskow to confirm the nature of his annular tear.  Docket No. 172 at 10.  Instead, Dr. Petersohn's supplemental report clarifies that Dr. Petersohn's consideration of an HIZ on Mr. Iwaskow's MRI was part of his methodology in diagnosing Mr. Iwaskow's annular tear as radial.  *See* Docket No. 172-8 at 2–4.

In his report, Dr. Petersohn states that, "[w]hile all HIZ[s] are annular tears, all annular tears are not HIZ[s].  Annular tears do not predict surgical outcome, but HIZ[s] do."  *Id.* at 3 (citing Timothy Maus and David Martin, *Imaging for Discogenic Pain in Diagnosis, Management, and Treatment of Discogenic Pain* 29 (2012)).  During his deposition, Dr. Petersohn stated that "classic high intensity zone[s] . . . correlate very well with the presence of a radial tear."  Docket No. 172-5 at 9, 47:7–9.  Regarding the lack of a post-discography CT scan, Dr. Petersohn also asserted that "the state of diagnosis of these issues has changed over the past 30 years . . . in general we're doing relatively few diagnostic discograms at this point, and we're making the diagnosis in a different way based on the endplate fractures and . . . the modic changes and such, because it turns out that correlates pretty well with the results of discography."  *Id.* at 19, 66:14–21.

The Court finds that Mr. Iwaskow has failed to demonstrate that Dr. Petersohn's opinion that Mr. Iwaskow has a radial annular tear is based on a reliable method.  In his deposition, Dr. Petersohn stated that to accurately differentiate between a

circumferential and radial annular tear "the standard would be to do a post-discography CT scan." Docket No. 172-5 at 18–19, 65:22–67:3. However, Dr. Petersohn identifies Mr. Iwaskow's annular tear as radial without a post-discography CT scan. He does not explain why he does not follow this "standard" or how he can identify a radial annual tear without a CT scan. As such, the Court finds that Dr. Petersohn's opinion that Mr. Iwaskow has a radial annular tear is not reliable. *See United States v. Harry*, 20 F. Supp. 3d 1196, 1225–26 (D.N.M. 2014) ("Courts have excluded experts' opinions when the experts depart from their own established standards." (citing *Truck Ins. Exch. v. MagneTek, Inc.,* 360 F.3d 1206, 1213 (10th Cir. 2004)).

Even if the Court were to find that Dr. Petersohn's method of diagnosing Mr. Iwaskow's annular tear as radial based on Modic changes was sufficiently reliable, Mr. Iwaskow has failed to show that Dr. Petersohn's opinion fits the facts of the case. *See* Fed. R. Evid. 702(c)–(d) (requiring that the testimony be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case"). Dr. Petersohn's report does not discuss why he believes that Mr. Iwaskow's Modic changes are indicative of the fact that Mr. Iwaskow has a radial annular tear. *See* Docket No. 172-8 at 1–5. Thus, although certain kinds of Modic changes and HIZs may correlate well to the results of a post-discography CT scan, as Dr. Peterson opined at his deposition, Dr. Petersohn's report does not demonstrate that Mr. Iwaskow has the kind of Modic changes that would allow Dr. Petersohn to diagnose Mr. Iwaskow's annular tear as radial. For this additional reason, the Court will exclude Dr. Petersohn from opining that Mr. Iwaskow has a radial annular tear.

Finally, the Court considers Dr. Petersohn's opinion that "Mr. Iwaskow's surgery was necessitated to treat the painful HNP, the annular tear, the endplate fractures and resulting nerve pain that were caused by the MVC." Docket No. 172-8 at 4. Safeco argues that "it appears that Dr. Petersohn cannot state that, standing alone, Plaintiff's annular tear is causing pain" and that, "[b]ecause Dr. Petersohn cannot establish that the annular tear he claims Plaintiff suffered in the 2015 car crash has been the longstanding, and recent, source of Plaintiff's pain, he should not be permitted to opine that Plaintiff's 2024 spinal surgery was necessitated by the 2015 Accident." Docket No. 172 at 11. In his report, Dr. Sabin stated that an "annular tear, in and of itself, does not present a strong surgical indication." Docket No. 172-7 at 17. He opines that

> [t]he claimant's MRIs have consistently shown an annular tear in his last motion segment, and no other remarkable findings. With respect to causation, as stated above, annular fissures are not typically caused by a traumatic event, such as a car accident. They are linked to normal degeneration of the spine. The claimant's MRI results in the medical records indicate he has degenerative disc disease. Therefore, I cannot actively state, within a reasonable degree [of] medical . . . certainty, that the claimant's potential surgery, planned for the last motion segment, for a visualized annular tear, is directly related to the 2015 motor vehicle incident nor the pain generator.

*Id.* at 18. Dr. Petersohn's report states that (1) Mr. Iwaskow's annular tear is shown as an HIZ on his MRIs, (2) HIZs correspond to a high likelihood of a positive surgical outcome, and (3) Mr. Iwaskow's annular tear was caused by the 2015 accident. Docket No. 172-8 at 2–5. The Court finds that Dr. Petersohn's opinions are responsive to Dr. Sabin's opinion and are, therefore, within the scope of Judge Prose's order permitting Dr. Petersohn to respond the Dr. Sabin's second IME report.

Dr. Petersohn's report cites authority for the proposition that the presence of an HIZ in an individual with an annular tear indicates a 70% likelihood that a patient would

have a "positive surgical outcome," and that further studies indicate the probability of a positive surgical outcome is increased when certain other diagnostic factors are present.  Docket No. 172-8 at 2–3; Docket No. 172-5 at 5, 41:21–42:2.  Safeco does not challenge the reliability of Dr. Petersohn's cited authority regarding the correlation between HIZs and positive surgical outcomes.  Safeco does not explain why Dr. Petersohn's opinion that Mr. Iwaskow's annular tear is shown as a HIZ on his MRI and the fact that individuals with an HIZ have a 70% likelihood of a positive surgical outcome is insufficient support for Dr. Petersohn's opinion that Mr. Iwaskow's back surgery would treat the pain caused by his annular tear.  As such, the Court will permit Dr. Petersohn to testify that Mr. Iwaskow's surgery was necessitated, in part, as a means of treating his annular tear.  The Court will next address the issue of whether Dr. Petersohn should be permitted to opine that the 2015 car accident caused Mr. Iwaskow's injuries, including his annular tear.

### C.  Opinion that Plaintiff's Surgery was Necessitated by the December 15, 2015 Car Accident

Safeco argues that Dr. Petersohn should not be permitted to opine that the December 15, 2015 car accident caused the injuries and pain for which Mr. Iwaskow underwent surgery.  Docket No. 172 at 12–16.  Safeco argues that Dr. Petersohn's opinion is unreliable because he fails to rule out the possibility that the natural aging process, Mr. Iwaskow's Bertolotti's syndrome, or Mr. Iwaskow's high activity levels over the past nine years caused Mr. Iwaskow's back pain.  *Id.* at 12.

First, Safeco argues that Dr. Petersohn's opinion that the 2015 car accident necessitated Mr. Iwaskow's back surgery to treat his disc herniation and annular tear should be excluded because Dr. Petersohn does not rule out the possibility that Mr.

21

Iwaskow's pain is caused by his Bertolotti's syndrome. *Id.* Dr. Sabin's report on Mr.

Iwaskow's second IME states that

> [i]t is noted that the claimant has x-ray evidence of a completely sacralized
> lumbosacral segment. A CT scan has not been done of this lumbosacral area to
> determine if this is a complete bony sacralization, and therefore there is a
> possibility of Bertolotti's syndrome as has been mentioned earlier, by others in
> the records which would mean his transitional anatomy, formed during gestation,
> would be the pain generator. This diagnosis however, is not currently intuitively
> obvious by palpatory exam, but a CT discogram, again, would play a role in
> ruling in or ruling out pain generators.[5]

Docket No. 172-7 at 18 (footnote added). In his October 14, 2024 report, Dr. Petersohn

states that

> 1) Mr. Iwaskow has an anatomic abnormality of the spine called "Bertolotti's
> syndrome" that is present in 4-8% of the population,
> 2) Bertolotti's syndrome is a spinal developmental defect present before birth that
> makes injury to the spine following a vehicular collision more likely than in a
> patient who does not have this abnormality. These injuries include disc
> herniation, painful annular tears, and vertebral, endplate fractures
> 3) Mr. Iwaskow suffered injury to the lumbar disc and to the vertebral endplate
> regions at the level adjacent to the Bertolotti's abnormality that were the original
> sources of his pain,
> 4) Mr. Iwaskow's surgery was necessitated to treat the painful HNP, the annular
> tear, the endplate fractures and resulting nerve pain that were caused by the
> MVC.
> 5) Surgery was not necessitated to treat the Bertolotti's syndrome.

Docket No. 172-8 at 4–5. Dr. Petersohn's opinions regarding Mr. Iwaskow's Bertolotti's

syndrome are within the scope of Judge Prose's order limiting the scope of Dr.

---

[5] The Court notes that Dr. Sabin's report states only that there "is a possibility of
Bertolotti's syndrome," which might "be the pain generator." Docket No. 172-7 at 18.
Dr. Sabin states that this "diagnosis however, is not currently intuitively obvious by
palpatory exam" and that "a CT discogram . . . would play a role in ruling in or ruling out
pain generators." *Id.* As such, although Safeco argues that Dr. Petersohn's opinion is
unreliable for not ruling out Mr. Iwaskow's potential Bertolotti's syndrome as a source of
his back pain, Dr. Sabin's report does not rule Bertolotti's syndrome in as a pain
generator.

Petersohn's response to Dr. Sabin's second IME, given that Dr. Sabin raises the issue of Mr. Iwaskow's potential Bertolotti's syndrome.

Safeco argues that Dr. Petersohn's opinion that "[s]urgery was not necessitated to treat the Bertolotti's syndrome" is not reliable because medical literature indicates that individuals with Bertolotti's syndrome are more likely to experience disc herniation and that Bertolotti's syndrome can cause chronic back pain.  Docket No. 172 at 12 (citing Amenda Miller & Andrew Zhang, *Berolotti Syndrome* (2024); Jeffrey M. Jancuska et al., *A Review of Symptomatic Lumbosacral Transitional Vertebrae: Bertolotti's Syndrome*, 9 Int'l J. Spine Surgery (2015); Francisco Alonzo et al., *Bertolotti's Syndrome: An Underdiagnosed Cause for Lower Back Pain*, 10 J. of Surgical Case Rep. 1, 1–4 (2018)).

Mr. Iwaskow responds that, in his deposition, Dr. Sabin acknowledged that, while Mr. Iwaskow has transitional anatomy,[6] this would not cause pain.  Docket No. 182 at 7. During his deposition, Dr. Sabin testified that Mr. Iwaskow's "fixed segment wouldn't be causing pain."  Docket No. 182-1 at 5, 23:11–12.  He stated that "there's one time a fixed segment can cause pain, and that's when the transfers process is so large that it rubs against the iliac crescent, and that's called Bertolotti Syndrome."  *Id.*, 23:12–15. However, Dr. Sabin opined that "that's not what . . . [M]att has."  *Id.*, 23:11–20.

---

[6] In his response, Mr. Iwaskow equates transition anatomy with Bertolotti's syndrome.  *See* Docket No. 182 at 7.  Dr. Sabin and Dr. Petersohn appear to dispute whether the congenital condition in Mr. Iwaskow's spine constitutes Bertolotti's syndrome.  Dr. Petersohn defines Bertolotti's syndrome as an "anatomic abnormality of the spine," Docket No. 172-5 at 23, 70:5–13, whereas Dr. Sabin appears to believe that Bertolotti's syndrome is the painful rubbing of the transfers process against the iliac crescent.  Docket No. 182-1 at 5, 23:11–15.  Regardless, both experts agree that Mr. Iwaskow has transitional anatomy.  *See id.* at 24:10–14.

In his deposition, Dr. Petersohn stated "[m]ost people who have Bertolotti
syndrome are asymptomatic . . . .  [T]hey may go from womb to tomb and never realize
that they had it."  Docket No. 172-5 at 25–26, 74:22–75:9.  Dr. Sabin agrees that, at
least in Mr. Iwaskow's circumstances, his fixed segment would not cause pain.  Docket
No. 182-1 at 5, 23:11–15.  Implicit in Dr. Petersohn's opinion that the 2015 car accident
caused the injuries for which Mr. Iwaskow underwent back surgery and that Mr.
Iwaskow's Bertolotti's syndrome did not necessitate the surgery is the fact that Mr.
Iwaskow did not have back pain before the car accident.  No party disputes that Mr.
Iwaskow first began reporting pain after the car accident.  Safeco does not explain why
the presence of Mr. Iwaskow's Bertolotti's syndrome throughout his life but the absence
of pain until the accident is insufficient to show that Mr. Iwaskow's Bertolotti's syndrome
did not cause Mr. Iwaskow's back pain.  Therefore, the Court finds that Dr. Petersohn
may testify that Mr. Iwaskow's surgery was not necessitated by his Bertolotti's
syndrome.[7]

The Court also finds that Dr. Petersohn's opinion that Mr. Iwaskow's surgery was
necessitated to treat the herniated disc, the annular tear, and the resulting nerve pain
caused by the 2015 accident is admissible.  As the Court explained in its prior order, Dr.
Petersohn's opinion that the 2015 car accident caused Mr. Iwaskow's herniated disc is

---

[7] To the extent that Safeco argues that Dr. Petersohn has failed to rule out the
possibility Mr. Iwaskow fully recovered from his injuries in the car accident and that, in
the time since the car accident, Mr. Iwaskow's Bertolotti's syndrome became an
independent cause of Mr. Iwaskow's pain, the Court notes that Dr. Sabin agrees that
car accident caused Mr. Iwaskow's back pain.  *See* Docket No. 182-1 at 3, 14:20–25
("Q And you believe that Matt's low back pain is a direct result of his 2015 automobile
accident, right? A·I do.· I do.· Q·And you wrote that Matt – Matt's back pain is·100 --
100 percent secondary to the subject accident.  A I did write that.").

supported by the fact that Mr. Iwaskow claims to have first began experiencing pain
shortly after the accident, that Mr. Iwaskow's medical records prior to the car accident
show no evidence of any pre-existing injury to Mr. Iwaskow's spine, and that Mr.
Iwaskow's medical records from shortly after the accident indicate that he has a
herniated disc.  Docket No. 149 at 19.  As Safeco acknowledges, MRI reports from
February 2016 also indicate that Mr. Iwaskow has an annular tear.  Docket No. 194 at 7;
Docket No. 172-7 at 11.  The Court will permit Dr. Petersohn to opine that the accident
caused Mr. Iwaskow's herniated disc and annular tear.  *See* Docket No. 149 at 19–20.

Dr. Petersohn's report states that Mr. Iwaskow's injury to his lumbar disc was
"the original source[ ] of his pain" and that Mr. Iwaskow's surgery was to "treat the
painful HNP, the annular tear, . . . and resulting nerve pain that were caused by the
MVC."  Docket No. 172-8 at 4.  While Safeco points to other possible sources of pain
and injury to Mr. Iwaskow's back that may have since contributed to Mr. Iwaskow's pain,
these subsequent possible pain generators do not undermine Dr. Petersohn's
conclusion that injuries from the 2015 accident were the original source of Mr.
Iwaskow's pain or that the surgery treated these injuries.[8]  Moreover, "the failure to rule
out *all* possible alternative causes of an illness does not automatically render an
expert's testimony inadmissible."  *Goebel*, 346 F.3d at 998–99 ("Given Mr. Goebel's
testimony about his symptoms both during and after the incident that are entirely
consistent both with Dr. Teitelbaum's conclusions and with a diagnosis unrelated to
depression, we agree with the district court that Dr. Teitelbaum's failure explicitly to rule

---

[8] As the Court noted earlier, Dr. Sabin agrees that the car accident was the
original source of Mr. Iwaskow's pain.  Docket No. 182-1 at 3, 14:20–25.

out depression as one possible alternative cause is not unreasonable."); *Hall v. Conoco Inc.*, 886 F.3d 1308, 1314 (10th Cir. 2018) ("An expert need not consider and rule out every *conceivable* cause."); *Taber v. Allied Waste Sys., Inc.*, 642 F. App'x 801, 810–11 (10th Cir. 2016) (unpublished) ("But an expert need not exclude every possible cause of an injury to testify as to causation.").  Given that Mr. Iwaskow first began reporting pain after the accident and has done so consistently since 2015, Mr. Iwaskow's medical reports are consistent with Dr. Petersohn's opinion that the accident caused Mr. Iwaskow's injuries.  The Court finds that Dr. Petersohn's opinion that the accident caused the herniated disc, annular tear, and back pain that was treated by the back surgery is sufficiently reliable.  *Goebel*, 346 F.3d at 999.

However, Dr. Petersohn's opinion, in full, is that "Mr. Iwaskow's surgery was necessitated to treat the painful HNP, the annular tear, the endplate fractures and resulting nerve pain that were caused by the MVC."  Docket No. 172-8 at 4.  The Court has excluded Dr. Petersohn's opinion that Mr. Iwaskow's herniated disc is impinging a nerve.  Docket No. 149 at 22.  Therefore, to the extent that Dr. Petersohn's statements regarding a "painful HNP" and "resulting nerve pain" is in reference to a herniated disc impinging a nerve, that opinion is excluded.  Moreover, for the reasons discussed above, Dr. Petersohn will not be permitted to testify that Mr. Iwaskow has endplate fractures and cannot testify that such fractures are causing Mr. Iwaskow's pain.  *Id.* at 13–14.

## IV.  CONCLUSION

It is therefore

**ORDERED** that Defendant Safeco Insurance Company of America's Rule 702 Motion to Exclude and/or Limit Testimony of Plaintiff's Expert Witness Dr. Jeffery D. Petersohn [Docket No. 172] is **GRANTED in part** and **DENIED in part**.

DATED December 6, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge